A. H. LICHT et al., Appellees, v. F. C. KLIPP, Appellant.

No. 41057.

FEBRUARY 9, 1932.

Thompson & Thompson and Geiger & Geiger, for appellant.

Donnelly, Lynch, Anderson & Lynch and F. J. Casterline & Son, for appellees.

KINDIG, J.—It is alleged that in May, 1921, the defendant-appellant F. C. Klipp, together with A. H. Licht, August Freund, P. V. Dyke, C. J. Pritz, Charles Conrad, Herman Wiebel, William Niermeier, Henry Mente, Otto Schneider, A. J. Charlton, Herman Cassier, Paul H. Kemmann, H. R. Griesbach, Fred Von Roden, Dick Schlueter, L. D. Rixe, George Deininger, D. W. Conrad, L. Hoeltje, Hubert Hoeltje, plaintiffs-appellees, and Charles Reinking and Henry Hoffmeier, "wrongfully, unlawfully, wickedly, and maliciously combined, confederated, and conspired together, each aiding, assisting, and abetting the other, to libel, defame, injure, and destroy (one Henry W. Mowry) in his standing as a citizen and member of the community in which he then lived, and to cause to be withdrawn from him the confidence and association of his neighbors and associates." Both Charles Reinking and Henry Hoffmeier are now deceased, and the plaintiff-appellee Lena Reinking is the administratrix of Charles Reinking's estate, and the plaintiff-appellee Ida Hoffmeier is administratrix of the Henry Hoffmeier estate.

Suit was brought by the said Henry W. Mowry against the alleged conspirators, and judgment was recovered in the district court of Jones County. An appeal from that judgment was taken to this court by the alleged conspirators, which resulted in a reversal. Mowry v. Reinking, 203 Iowa 628. After that reversal, the cause was again tried in the district court, which likewise resulted in a judgment for Henry W. Mowry against the alleged conspirators. This last-named judgment was paid.

For the purpose of defending in those conspiracy trials, the appellant, appellees, Charles Reinking, and Henry Hoffmeier employed attorneys and counsellors. These attorneys and counsellors were C. M. Dutcher, of Iowa City, Don Barnes and

Otto L. Schluter, of Cedar Rapids, and Park Chamberlain, of Anamosa. The fees of those attorneys and counsellors, together with their expenses, amounted in all to $16,427.59. Those attorney fees and expenses were no part of the judgment or costs rendered in the conspiracy case.

Appellees were compelled to pay for those legal services in full. Appellant paid no part thereof. Consequently this proceeding was commenced by the appellees to compel the appellant to contribute his portion of the foregoing fees incurred for the common defense of the alleged conspirators, and, as said in the preliminary statement, the district court rendered judgment accordingly. Of that judgment, however, appellant complains.

█ I. No exception is taken by appellant to the amount of the attorney fees and expenses, nor does he say that the services were not rendered. His objection at this juncture is that contribution cannot be obtained from him by the appellees because the attorney fees and legal expenses were incurred in defending a tort committed by joint wrongdoers.

In view of the fact that the alleged conspiracy was committed by appellant and the other above-named conspirators, he insists that it would be against public policy to allow a contribution for the attorney fees paid by appellees. To put the thought differently, appellant argues that contributions between joint tort-feasors can not be enforced at law, and in a cause void at law, equity can not give relief. See Horrabin v. City of Des Moines, 198 Iowa 549; Johnson County Savings Bank v. City of Creston, 212 Iowa 929.

Here, however, appellees are not asking contribution from the appellant for the judgment or costs in the conspiracy case. Hence, there is entirely eliminated from the issues here involved a contribution from a joint wrongdoer so far as any liability growing out of the alleged tort itself is concerned. Those alleged conspirators did not commit a tort by hiring attorneys and counsellors for their defense in the conspiracy cases. Such act of hiring attorneys and counsellors by the alleged co-conspirators was neither wrongful nor against public policy. No illegality whatever appears in the transaction wherein the conspirators hired attorneys and counsellors to defend them in the conspiracy suits. That act of hiring was entirely proper, legal, and valid. Therefore, the rule invoked by appellant has no application to

the facts of this case. See Fakes v. Price, 89 Pac. 1123 (Okla.). Appellant and appellees are not joint tort-feasors so far as their acts were concerned in hiring attorneys and counsellors to defend the conspiracy suit. The joint tort arose through the conspiracy to injure the aforesaid Henry W. Mowry, and culminated before the attorneys and counsellors were hired. See Mowry v. Reinking (203 Iowa 628), supra. Following the alleged tort, the attorney fees and legal expenses were incurred. Said so-called wrongdoing, then, as before stated, was not being actually engaged in when the attorneys and counsellors were hired. Wherefore, when the so-called conspirators hired the attorneys and counsellors, they performed a new act after the conspiracy had ended. This latter act of hiring attorneys and counsellors, as before explained, was neither wrongful nor illegal.

Consequently, so far as the proposition now under consideration is concerned, appellees are entitled to contribution from appellant for his proportionate share of the attorney fees and legal expenses paid by them.

■ II. A further argument is made by appellant in his endeavor to avoid his portion of the attorney fees and legal expenses. Such argument is based upon the theory that the obligation for attorney fees is not joint and several, but several only. The theory of the defense carried to its conclusion is that the alleged conspirators, each for himself, hired the attorneys and counsellors and agreed to pay them, not all, but his individual portion of the fee only. If the contracts under which the obligations of the joint conspirators arose were several only, as distinguished from joint and several, contribution can not be had, under the facts of this case. Without the joint and several contracts there would be no basis for applying the principle of contribution, because in that event there would be no inequality of burden. Under the several obligations there would be no common duty upon a single obligor to contribute to those who performed their own several contracts only. McArthur v. Board, 119 Iowa 562; Young v. Bierschenk, 199 Iowa 309.

Whether a contract is joint or several must be determined by the terms thereof, viewed in the light of the attending circumstances, and the practical, mutual construction, if any, placed thereon by the parties. Shively v. Globe Mfg. Co., 205 Iowa 1233. In the case at bar, the parties stipulated that the

so-called conspirators, including the appellant, "together" hired the attorneys and counsellors "to make defense for them." Furthermore, it is stipulated that "they" (the aforesaid conspirators, including appellant) employed the attorneys and counsellors. It is important to note that there is lacking in the stipulation any statement that the appellant and the other conspirators severally employed those attorneys. This employment was made by the conspirators "together" to defend for them. They, not each for himself, employed the attorneys. Plainly the parties to that contract consisted of the attorneys and counsellors on the one part and the common body of conspirators on the other.

Whatever defense was contemplated related, not to the group as individuals, but to all of them collectively. The obligation for these legal services was incurred by appellant and his co-conspirators jointly, as distinguished from severally. That conclusion is reached by considering the words in the stipulation with their context "viewed in the light of the attending circumstances." Under that agreement of employment the attorneys could have sued any or all of their clients for the entire compensation. Consequently there was a common obligation among the conspirators to these attorneys, and, in view of the fact that appellant did not discharge his portion of that common obligation, appellees, who paid the whole debt, are entitled to contribution from him for the excess over their own liabilities.

"Ordinarily, one of two joint obligors for the payment of money is bound to indemnify the other for any sum necessarily paid in excess of his proportional share in discharge of their obligation." Novak v. Dupont, 112 Iowa 334, (local citation 336).

Such doctrine of contribution in equity does not necessarily depend upon express contract. Rather than that, such doctrine is based upon the principle that equality of burden under certain obligations is equity. Lex v. Selway Steel Corporation, 203 Iowa 792 (local citation 818). As said by the Ohio Court, in Robinson v. Boyd, 53 N. E. 494, 60 Ohio St. 57:

"It (the doctrine of contribution) is not founded on contract, but arises from the equitable consideration that persons

subject to a common duty or debt should contribute equally to the discharge of the duty or debt.''

That pronouncement was approved in the Selway Steel Corporation case (203 Iowa 792), supra.

So, then, in view of the fact that the obligation in the case at bar is joint and several, a basis for contribution is laid. Novak v. Dupont, (112 Iowa 334), supra; Flickinger v. Price, 165 Iowa 570; Kessel v. Murray, 197 Iowa 17; Hansen v. Cerro Gordo State Bank, 209 Iowa 1352. Appellant has paid no part of this obligation. Appellees were required and compelled to pay it all. To the extent that appellees paid appellant's proportional share of the obligation, they paid in excess of their own equitable share thereof. This, under the record, they were compelled to do. Accordingly, appellant should contribute to appellees for his proportionate share of the obligation.

The district court compelled him to make the contribution, and its judgment, under the record, must be, and is, affirmed.— Affirmed.

WAGNER, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.